U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 2 1 2011

TONY R. MOORE, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| ANDRE GUIDRY, ET AL. | CIVIL ACTION NO.: 09-1497 |
| VERSUS | JUDGE DOHERTY |
| SOUTHERN NATIONAL LIFE INS. CO., INC. ET AL. | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Before the Court are three motions: (1) Motion for Summary Judgment [Doc. 35] filed by plaintiffs Andre and Mandy Guidry; (2) Motion for Summary Judgment [Doc. 36] filed by defendant Stuller, Inc. ("Stuller"); and (3) Motion for Summary Judgment [Doc. 37] filed by defendant Southern National Life Insurance Company, d/b/a Benefit Management Services ("BMS"). In their motion, plaintiffs argue they "are entitled to a judgment as a matter of law granting Complainants' request for health care benefits as prayed for in Complainants' initial and amending Complaints," seeking immediate payment of health care benefits, as well as attorney's fees and costs. Plaintiffs allege Stuller, Mrs. Guidry's employer, refused to pay benefits after Mrs. Guidry's husband, Andre Guidry, was injured in a single-car accident which left Mr. Guidry's passenger dead. In its motion, Stuller seeks summary judgment dismissing "plaintiffs' claim for benefits because of the application of a Plan exclusion," specifically the exclusion for injuries sustained during a Plan participant's commission of a felony. BMS essentially piggy-backs Stuller's motion, also seeking an order dismissing plaintiff's claims. Responses have been filed to all of the motions [Docs. 42, 43, 44 &

45], and plaintiffs filed a reply brief [Doc. 46].[1]

Although the parties filed the instant motions as motions for summary judgment, because this matter is one sounding in ERISA, this Court notes what the parties are, in fact, seeking is a determination on the merits. That is, the parties seek a ruling as to whether the benefits determinations made by Stuller and/or BMS were proper. Thus, the procedural posture in which the issues have been presented to the Court is not appropriate. The parties have been contacted by the Court and have agreed that the matter should be presented on the merits of the plaintiffs' claims. Therefore, this Court will consider the briefs filed as if they were briefs on the merits and will consider whether Stuller and/or BMS properly denied plaintiffs' claims for benefits.

For the following reasons, the plaintiffs' claim for benefits is DENIED.

I. **Factual and Procedural Background**

Plaintiff Mandy Guidry is an employee of Stuller. On December 7, 2007, Mandy's husband, plaintiff Andre Guidry, was involved in a single car automobile accident in which Mr. Guidry sustained serious injuries that required extensive medical treatment. Additionally, Mr. Guidry's passenger in the vehicle was killed. Plaintiffs allege at the time of Mr. Guidry's accident, he was covered under a group health care insurance policy issued to Stuller.

The policy under which plaintiffs seek benefits is the Stuller, Inc. Employee Benefit Plan, Group #STL0903 ("the Plan"). The Plan funds employee welfare benefits, including health insurance benefits, for eligible employees of Stuller and their eligible dependents, which includes

---

[1] This Court notes plaintiffs filed their reply brief without filing a motion for leave commensurate therewith. It is this Court's practice to require that all parties wishing to file a reply brief first be granted leave to do so before filing their brief. However, it appears the motions for summary judgment were first set for hearing before Magistrate Judge Patrick Hanna, who permits the filing of a reply brief without the filing of a motion for leave. It was not until after the reply brief was filed that the motions for summary judgment were transferred to this Court. This Court will allow the reply brief to stand under these circumstances.

spouses. Stuller both funds the Plan and acts as its benefits administrator. The Plan documents explains the administration of the Plan as follows:

> The Plan is a self-funded group health Plan and the administration is provided through a Third Party Claims Administrator. The funding for the benefits is derived from the funds of the Employer and contributions made by covered Employees. The Plan is not insured.[2]
>
> The Plan provides coverage for medical benefits, defined as:
>
> Medical Benefits apply when Covered Charges are incurred by a Covered Person for care of an injury or Sickness and while the person is covered for these benefits under the Plan.[3]
>
> The Plan also contains a section entitled "Plan Exclusions," which states:
>
> For all Medical Benefits shown in the Schedule of Benefits, a charge for the following is not covered:
>
> **(25)   Illegal acts.** Charges for services received as a result of Injury or Sickness caused by or contributed to by engaging in an illegal act or occupation; by committing or attempting to commit any crime, criminal act, assault or other felonious behavior; or by participating in a riot or public disturbance. This exclusion does not apply if the Injury resulted from an act of domestic violence or a medical (including both physical and mental health) condition.[4]

The Plan document was thereafter amended, deleting the foregoing paragraph and adding the following:

> **Felony Participation.** Charges for a Sickness or Injury sustained during the commission or attempted commission of an assault or felony or Injuries sustained while engaging in an illegal occupation. An injury resulting from an act of domestic violence or medical (including both physical and mental health) condition is not

---

[2] *See* Plan Document, attached to BMS's ERISA Case Order Response, Doc. 8, at p. 61.

[3] *Id.* at p. 18.

[4] *Id.* at p. 39.

excluded.[5]

The Plan documents list defendant BMS as the Plan's Third Party Claims Administrator.[6]

Plaintiffs allege their entitlement to health insurance benefits under the terms of the foregoing Plan for the injuries sustained by Mr. Guidry in his December 7, 2007 automobile accident. Although Stuller initially paid some claims associated with Mr. Guidry's accident, Stuller ultimately determined the felony exclusion barred coverage under the circumstances of the claim, denied all future claims, and sought reimbursement for claims it had already paid.[7]

In the instant lawsuit, plaintiffs allege the following claims: (1) a claim for failure and refusal to pay medical benefits under the terms of the Plan against BMS and Stuller; and (2) a claim for breach of defendants' contractual obligations by virtue of their failure to pay medical benefits pursuant to the Plan.[8] Plaintiffs seek damages for negative effects to their credit rating, diminution of their personal reputations as timely payers of credit obligations, mental anguish and emotional distress, and attorneys's fees and costs.

On September 14, 2009, an ERISA Case Order was issued by the magistrate judge. At that time, only plaintiffs and BMS were parties to the lawsuit. Under the original ERISA Case Order, the parties stipulated the employee benefit plan at issue is governed by ERISA; the employee benefit

---

[5] The effective date of this amendment was March 1, 2005. Therefore, the amendment was effective on the date of Mr. Guidry's accident.

[6] *Id.* at 62.

[7] The record is less than clear regarding when – and how – Stuller communicated its denial of benefits to the plaintiffs, as no party has identified a denial of coverage letter anywhere in the record. However, it is clear Stuller, after initially making some payments on the claim, began denying claims and refused to provide medical benefits to the Guidrys.

[8] The plaintiff does not specify whether either of the claims is alleged under ERISA or Louisiana state law.

plan vests Stuller, as Plan Administrator, with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan; and ERISA preempts all state claims related to the Plan.[9] However, at that time, the parties did not stipulate the administrative record was complete, noting certain parts of the record had been lost during Hurricane Gustav. Nevertheless, the parties noted Stuller had recently been added as a party and could potentially help locate some of the missing documents. On June 9, 2010, Stuller filed its response to the ERISA Case Order, joining in the previously-filed stipulations of the parties and adding certain documents that had theretofore been missing. On August 16, 2010, the parties filed into the record a revised record index, identifying the entirety of the administrative record, which all parties then agreed was complete.

On November 1, 2010, all parties filed motions for summary judgment pursuant to a deadline set by the magistrate judge.

## II. Law and Analysis

"ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." *Bratton v. National Union Fire Insurance Company of Pittsburgh, PA*, 215 F.3d 516, 521-22 (5th Cir. 2000). "[A] denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 521. "When an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Id.* at 521 n.4.

In this case, the parties have previously stipulated Stuller is the Plan Administrator, with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan.

---

[9] Docs. 7 & 15.

Specifically, the Plan identifies Stuller as the Plan Administrator, with the following duties:

> **PLAN ADMINISTRATOR.** Stuller, Inc. Employee Benefit Plan is the benefit plan of Stuller, Inc., the Plan Administrator, also called the Plan Sponsor. It is to be administered by the Plan Administrator in accordance with the provisions of ERISA. An individual may be appointed by Stuller, Inc. to be Plan Administrator and serve at the convenience of the Employer. If the Plan Administrator resigns, dies or is otherwise removed from the position, Stuller, Inc. shall appoint a new Plan Administrator as soon as reasonably possible.
>
> The Plan Administrator shall administer this Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures. *It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan.* The decisions of the Plan Administrator will be final and binding on all interested parties.

Pursuant to the foregoing language and the stipulation of the parties, this Court concludes Stuller was given full discretion to interpret the Plan, find the facts applicable to specific claims for benefits, and otherwise administer the Plan within its discretion. Therefore, this Court will apply the abuse of discretion standard in reviewing Stuller's benefits decision in this case.

The Fifth Circuit has described the nature of the abuse of discretion review, as applied to an administrator such as Stuller's factual findings. "When applying the abuse of discretion standard, 'we analy[ze] whether the plan administrator acted arbitrarily or capriciously. A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence. An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.' We must find that '[w]ithout some *concrete evidence* in the administrative record that supports the denial of the claim, . . . the administrator abused its discretion.'" *Lain v. Unum Life Insurance Company of America*, 279

F.3d 337, 342-43 (5th Cir. 2002) (citations omitted) (emphasis in original).

For review of Stuller's interpretation of the Plan, the Fifth Circuit has established a specific test. The Fifth Circuit "applies a two-prong test when reviewing an administrator's denial of benefits. First, we determine the 'legally correct interpretation of the [policy].' If it is found that the claims fiduciary failed to give the plan 'the legally correct interpretation, [the Court must] then determine whether the claims fiduciary's decision was an abuse of discretion.'" *Lain*, 279 F.3d at 342-44. As to the first prong of the test, "[i]n ascertaining the legally correct interpretation of the policy, we must consider (1) whether a uniform construction of the policy has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the policy." *Id.* at 344.

Where an administrator's decision is "tainted by a conflict of interest," courts implement a sliding scale standard of review. *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 538 (5th Cir. 2007), *citing MacLachlan v. ExxonMobile Corp.*, 350 F.3d 472, 478 (5th Cir. 2003). The standard of review does not change, *i.e.*, it remains abuse of discretion; the existence of a conflict of interest is simply a factor to be considered in determining whether the administrator abused its discretion. *Wade*, 493 F.3d at 538, *citing Vega*, 188 F.3d at 296-97. Less deference is given to the Administrator, in proportion to the evidence of conflict. *Vega*, 188 F.3d at 296-97. Where "a minimal basis for a conflict is established, the decision is reviewed with 'only a modicum less deference than we otherwise would.'" *Wade*, 493 F.3d at 538, *citing Lain*, 279 F.3d at 343 (quoting *Vega*, 188 F.3d at 301).

The plaintiffs bear the burden of proving the Plan Administrator abused its discretion in concluding they were not entitled to benefits under the terms of the Plan. *See Dowden v. Blue Cross*

*& Blue Shield of Texas, Inc.*, 126 F.3d 641, 644 (5th Cir. 1997); *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9. The abuse of discretion standard of review requires that this Court determine, first, whether the Administrator's interpretations and constructions are legally correct and, if legally correct interpretations or constructions were used by the Plan Administrator, whether the Plan abused its discretion in reaching those conclusions upon which its decision is based.

As noted above, the parties stipulate the Plan grants Stuller the complete discretion to construe and interpret all terms and provisions of the Plan. As such, Stuller's constructions of the Plan, interpretation of the Plan, resolution of ambiguities in the language of the Plan, and factual findings will be reviewed for an abuse of discretion. *See Bratton*, 215 F.3d at 521 n.4.

With the foregoing standards in mind, this Court will now address the pending motions.

### III. The Pending Motions

In their motion, the plaintiffs argue they are "entitled to judgment as a matter of law and are entitled to a judgment from this Honorable Court granting Complainants' request for health care benefits as prayed for in the initial and amending Complaints, and the judge should order the defendants to immediately provide to Complainants the requested benefits, as well as attorney fees and costs associated with this matter as provided by law." In its motion, Stuller seeks summary judgment dismissing "plaintiffs' claim for benefits because of the application of a Plan exclusion." Although BMS filed its own stand-alone motion for summary judgment, BMS essentially piggy-backs Stuller's motion, also seeking an order dismissing plaintiffs' claims on grounds Stuller properly denied the plaintiffs' claim for benefits under the felony exclusion provision of the Plan.

Plaintiffs argue Stuller's decision to deny benefits is unsupported by substantial evidence in the record and amounts to an abuse of discretion. Specifically, plaintiffs contend Stuller based its

denial of benefits on the following provision of the policy:

> **For all Medical Benefits shown in the Schedule of Benefits, a charge for the following is not covered: Felony Participation.** Charges for a Sickness or Injury sustained during the commission or attempted commission of an assault or felony or Injuries sustained while engaging in an illegal occupation. . . . .

Plaintiffs argue Stuller abused its discretion when it denied benefits under the felony exclusion contained within the policy, because the decision made by Stuller and BMS was based on their erroneous determination that Mr. Guidry committed vehicular homicide, a felony, on December 7, 2007. Plaintiffs argue Stuller and/or BMS based this conclusion "merely on the fact that (1) Mr. Guidry's blood alcohol content as measured post-accident at Lafayette General Medical Center exceeded the legal limit; and (2) Mr. Guidry's passenger died in the automobile accident." Plaintiffs argue that in order to deny coverage based on the felony exclusion, Stuller would have had to have specific evidence showing Mr. Guidry satisfied every element of the crime of vehicular homicide under Louisiana law. Specifically, plaintiffs argue Stuller needed evidence that the plaintiff's intoxication actually *caused* the death of his passenger. Plaintiffs argue this evidence does not exist in the administrative record. Plaintiffs further argue the police report from the December 7, 2007 accident is inconclusive regarding whether alcohol was a factor in the death of Mr. Guidry's passenger, and, therefore, there is insufficient evidence to conclude the felony exclusion applies to bar coverage.

In its motion, in which BMS joins, Stuller argues it is undisputed Mr. Guidry's blood alcohol content was .254, more than three times the legal limit of 0.08 in Louisiana; Mr. Guidry's passenger was killed in the accident; under Louisiana law, operating a motor vehicle while intoxicated is a

crime;[10] and the killing of an individual while driving intoxicated is a felony under Louisiana law, whether the individual committing the crime had the intent to kill the victim or not.[11] Under the foregoing facts and circumstances, Stuller argues it did not abuse its discretion in denying the

---

[10] Stuller cites La. Rev. Stat. §14:98, which states:

**§98 Operating a vehicle while intoxicated**

A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:

   (a) The operator is under the influence of alcoholic beverages; or

   (b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or

   (c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964; or

   (d)(i) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.

La. Rev. Stat. 14:98.

[11] Stuller cites La. Rev. Stat. 14:32.1, the statute for vehicular homicide, which states:

A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists and such condition was a contributing factor to the killing:

(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.

(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

(3) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.

(4) The operator is under the influence of alcoholic beverages.

(5)(a) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.

La. Rev. Stat. §14:32.1.

plaintiffs' claims for medical benefits.

In *James v. La. Laborers Health & Welfare*, 29 F.3d 1029 (5th Cir.1994), the Fifth Circuit affirmed the application of a felony exclusion contained in an ERISA policy of insurance. Although this Court recognizes all cases involving benefits determinations under ERISA hinge upon the particular facts of the case, and, most importantly, upon the specific language of any plan or policy, *James* stands for the proposition that an insurance policy *may* operate to exclude coverage under applicable ERISA standards. In *James*, a plan participant sustained injuries as a result of a gunshot wound to his chest. The police report from the incident showed the plan participant was shot in the stomach by his common-law wife, who was attempting to defend herself from being beaten by the plan participant with a shoe. *James*, 29 F.3d at 1031-32. Although the plan participant was not arrested, charged, or convicted as a result of the incident, the Plan denied medical benefits arising from the incident under an exclusion for injuries sustained in the course of the commission of a felony, concluding the plan participant had engaged in at least two possible felonies – aggravated battery and second degree battery – at the time he was shot.[12] *Id.* at 1032.[13] The district court ultimately held the plan's decision was legally correct, and the Fifth Circuit affirmed, noting:

> Under Louisiana law, aggravated battery is defined as "battery committed with a dangerous weapon." La.R.S. 14:34. A dangerous weapon is defined as any "substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily injury." La.R.S. 14:2(3).
>
> The Fund found, after conducting their own investigation, that James used his shoes in a manner calculated or likely to cause death or great bodily harm when he stood above Jackson and kicked her left side as she lay on the ground. Such a finding

---

[12] In so concluding, the district court consulted cases holding a shoe can qualify as a deadly weapon for purposes of the Louisiana aggravated battery statute.

[13] The plan participant was later killed by his common-law wife, and the claim for benefits was brought by the participant's estate.

> comports with a fair and reasonable interpretation of the Plan in light of the Louisiana criminal cases finding shoes to be dangerous weapons. *Interest of Ruschel,* 411 So.2d 1216 (La.App. 4th Cir.1982) (steel-toed boot used in "brutal" attack); *State v. Taylor,* 485 So.2d 117 (La.App. 2d Cir.1986) (tennis shoes used to stomp victim with such force that shoe marks were left on face).

29 F.3d at 1033.

In concluding the plan properly denied benefits under the felony exclusion, the Fifth Circuit acknowledged the application of a felony exclusion *even though the claimant had not been and could not be prosecuted for the felony*:

> The failure of the state criminal justice system to prosecute an individual for alleged felonious activity by no means constitutes an affirmative finding that the individual is absolved of any crime. Unlike the Plan, the State has neither the resources nor the obligation to prosecute a suspect in connection with each and every felony, potentially or actually committed.... As the state cannot prosecute a dead man, the trustees would be unable to deny benefits although the injuries were not covered by the Plan.

*Id.* at 1034.

Plaintiffs argue Stuller did not have sufficient evidence to determine the actions of Mr. Guidry satisfy the elements of the crime of vehicular homicide under Louisiana law and, therefore, Stuller's denial of benefits under the felony exclusion was improper in this case. Specifically, plaintiffs argue Stuller did not have sufficient evidence of a *causal connection* between Mr. Guidry's unlawful blood alcohol concentration and the victim's death, and had no evidence that Mr. Guidry's alleged intoxication "was a contributing factor to the killing" of his passenger.[14]

Plaintiffs mis-frame the issue. This Court is not charged with the task of determining whether the death of Mr. Guidry's passenger was *actually* proximately caused by Mr. Giudry's

---

[14] Plaintiffs argue Stuller cannot deny benefits based on the "attempted commission of a felony," because such a crime requires the specific intent to commit a crime, and there is no evidence in the record that Mr. Guidry intended to kill his friend on December 7, 2007.

intoxication, a standard that would be more appropriately addressed in a criminal trial. Here, the only determination to be made by the Court is whether Stuller properly interpreted the Plan and abused its discretion by "arbitrarily or capriciously" denying plaintiffs' claim for benefits.

The Fifth Circuit's decision in *James* stands for the proposition that it is appropriate for a Plan to consider the jurisprudence in determining whether the Plan abused its discretion in making its benefits determination. In the instant case, Stuller denied benefits after concluding concrete evidence showed Mr. Guidry's blood alcohol content was .254 based on test results taken in the emergency room on the same day as the accident (a level that was three times higher than the legal limit for operating a motor vehicle) and based on the fact that the passenger in Mr. Guidry's vehicle was killed. The question before this Court is not whether Mr. Guidry's intoxication was the cause-in-fact of Mr. Guidry's passenger's death, but rather, whether Stuller's interpretation of the Plan language was legally correct, and, if so, whether Stuller abused its discretion in denying benefits considering the *facts* of Mr. Guidry's intoxication and the death of his passenger. Although plaintiffs suggest the accident was, in fact, caused by a defect in the roadway, this Court is not charged with the task of concluding who or what was at fault in causing the death of Mr. Guidry's passenger. Rather, this Court must determine whether Stuller properly interpreted the plan and abused its discretion in denying benefits, that is, whether Stuller's reading of the Plan was fair and reasonable.

As to the first prong – whether Stuller made a "legally correct interpretation" of the Plan – this Court must determine (1) whether a uniform construction of the policy has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the policy." With respect to the first factor, this Court notes no party has provided other examples of Stuller's interpretation of the Plan in similar

situations. With respect to the third factor, this Court notes unanticipated costs *could* result from a different interpretation of the policy. Indeed, Stuller has been informed by Symetra, its stop-loss carrier, that it will not be reimbursed should it pay excluded claims, and Stuller has further been advised by its legal department it, as a Plan fiduciary, could potentially expose itself to future liability from other members of the Plan should it pay an excluded claim. With respect to the second factor – whether this Court concludes Stuller's interpretation of the Plan was fair and reasonable – this Court concludes it was. Furthermore, this Court concludes Stuller's interpretation of the Plan is consistent with the decisions of other plans that have had to make similar decisions. For example, in *Thomas v. Life Ins. Co. of North America*, 1998 WL 378138, 3 (E.D. La. 1998), a similar case, the court stated:

> The court concludes that the felony exclusion provision contained in the policy is clear and unambiguous. By its terms, the policy excludes coverage "for loss resulting from ... commission of a felony by the insured." The felony exclusion is the sole ground upon which Plaintiff's claim for benefits was denied. Vehicular homicide is a felony offense. *See* La.Rev.Stat. 14:32.1(B); *Cf. State v. Cook*, 674 So.2d 957 (La.1996). Under Louisiana law, a felony is defined as "an offense that *may* be punished by death or imprisonment at hard labor." *See* C.Cr.P. Art. 933, La.Stat.Rev 14:2(4); *State v. Jack* 332 So.2d 464, 465 (La.1976). A violation of section 14.32.1 may be punished with or without hard labor. Section 13:32.1 imposes a minimum sentence of imprisonment of two years and a minimum fine of $2,000. The statute requires that at least one year of the sentence of imprisonment shall be imposed without the benefit of probation, parole, or suspension of sentence. *Id.*
>
> The court finds that the elements of vehicular homicide are present here. The Louisiana Supreme Court stated in *State v. Taylor,* 463 So.2d 1274, 1275 (La.1985), that conviction of the offense requires proof that (1) an offender's unlawful blood alcohol concentration, (2) combined with his operation of a vehicle, (3) to cause the death of a human being. The uncontested facts of this care are that (1) Clifford Smith was legally intoxicated at the time of his death, (2) that Clifford Smith was operating a vehicle, crossed over the center divide and collided head-on with an on-coming the truck, (3) which collision resulted in four deaths, including Clifford Smith's. The court finds that there is no factual dispute that the elements of vehicular homicide are satisfied here.

Thus, in *Thomas*, the court affirmed a plan's denial of benefits under a felony exclusion where the plan participant's blood alcohol concentration was unlawful; the plan participant operated a vehicle; the plan participant got into a collision; and that collision resulted in the death of other people. Based on the facts available to Stuller at the time it made its decision and the applicable law, this Court concludes Stuller has correctly interpreted the Plan language.

This Court must next consider whether Stuller abused its discretion in denying benefits. In *James*, the Fifth Circuit held a plan did not abuse its discretion when it conducted its own investigation into the conduct underlying a claim and denied benefits after consulting the results of cases interpreting the Louisiana revised statute for aggravated battery. Here, in making its benefits determination, Stuller was charged with making a judgment call as to whether Mr. Guidry's alcohol content was a contributing factor in causing the death of his passenger, which would thereby trigger Louisiana's vehicular homicide statute, and the felony exclusion provision of the Plan. In making its determination, Stuller evaluated the elements of the crime of vehicular homicide under Louisiana law and determined there was sufficient evidence in the record to support a decision to rely on the felony exclusion provision of the Plan.

This Court notes a decision is arbitrary when made "without a rational connection between the known facts and the decision. An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial." In order to conclude Stuller abused its discretion, this Court must conclude there is no *concrete evidence* in the administrative record that supports the denial of the claim. Here, there is a *rational connection* between the known facts and the decision or between the found facts and the evidence. Although plaintiffs argue there was insufficient evidence for Stuller to determine Mr. Guidry's blood alcohol

content contributed to the death of his passenger and suggest the condition of the roadway, instead, caused the accident, this Court concludes Stuller's decision to deny benefits because of Mr. Guidry's intoxication was rational. Indeed, even though there has been no trial and no determination by a court that Mr. Guidry's intoxication was a cause of the accident and the passenger's death, it was rationale for Stuller to conclude that Mr. Guidry's intoxication was a cause of or contributing factor in the accident. Thus, this is not a case in which there is a lack of concrete evidence to support the Plan Administrator's decision.

Additionally, this Court concludes Stuller's decision comports with legal standards under Louisiana law. *See, e.g., State v. Matthews,* 450 So.2d 644 (La.1984) (holding "it is not essential that the state prove the defendant's action was the sole cause of death; it is sufficient if the defendant's conduct hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause"), *cited in State v. Gourdine,* 946 So.2d 277, 284 (La. App. 2nd Cir.2006). *See also Thomas v. Life Ins. Co. of North America,* 1998 WL 378138, 3 (E.D. La. 1998). Here, this Court concludes Stuller did not abuse its discretion in concluding Mr. Guidry's intoxication was a contributing cause of his passenger's death.

That Mr. Guidry was not prosecuted for vehicular homicide does not foreclose Stuller's ability to deny benefits on the basis of the felony exclusion of the Plan. Indeed, in *James*, the Fifth Circuit noted:

> Appellant further asserts that James' conduct cannot be considered a "felony" since the legal authorities did not prosecute the matter. The failure of the state criminal justice system to prosecute an individual for alleged felonious activity by no means constitutes an affirmative finding that the individual is absolved of any crime. Unlike the Plan, the State has neither the resources nor the obligation to prosecute a suspect in connection with each and every felony, potentially or actually committed. The illogic of this rule was also criticized by our brethren on the Seventh Circuit, who

>present an example "in which a Plan participant is killed during the commission of a felony. As the state cannot prosecute a dead man, the trustees would be unable to deny benefits although the injuries were not covered by the Plan."

29 F.3d at 1034, *citing Berg v. Board of Trustees, Local 705 International Bro. of Teamsters Health and Welfare Fund*, 725 F.2d 68, 70 (7th Cir.1984). This Court finds the Fifth Circuit's rationale applicable in the instant case.

Finally, although not argued by plaintiffs in their motion for summary judgment, in their opposition to Stuller's motion, plaintiffs appear to argue that because Stuller both administers and funds the Plan, an apparent conflict of interest exists. First, this Court notes the burden is on plaintiffs to show concrete evidence of a conflict of interest. In this case, the plaintiffs point to Stuller's consultation with its insurance agent Gallagher Benefit Services., Inc. and BMS prior to its ultimate benefits determination as evidence that Stuller allowed its dual role to influence its decision. This Court disagrees. What the foregoing shows is that Stuller initially paid the Guidry's claims and attempted to find ways to continue paying them. When it became apparent the claim was not covered, and when Stuller was reminded of its role as a fiduciary to the Plan itself – rather than as a fiduciary to any one Plan participant – Stuller made the apparently difficult decision to stop paying benefits and deny all future claims. The foregoing course of conduct does not evidence a conflict, but rather, evidences a company trying to help a Plan participant before realizing it could not do so without exposing itself to liability from other Plan participants.[15] Regardless, even if a conflict of interest exists under these facts, this Court concludes Stuller did not abuse its discretion in denying Mr. Guidry's claim.

---

[15] The record shows at some point, Stuller was informed by BSM that Symetra, Stuller's stop-loss carrier, would not reimburse Stuller if it paid benefits that should be excluded under a provision of the Plan.

## IV. Conclusion

Considering the foregoing, IT IS ORDERED that plaintiffs' Motion for Summary Judgment [Doc. 35] is DENIED. It is further ORDERED that the Motions for Summary Judgment [Docs. 36 & 37] filed by Stuller, Inc. and Southern National Life Insurance Company, d/b/a Benefit Management Services ("BMS") are GRANTED in their entirety, and all claims of the plaintiffs are DENIED AND DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _21_ day of June, 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE